Floyd M. Haney and Leonora Haney, Husband and Wife v. Commissioner.
Haney v. Commissioner
Docket No. 58063.
United States Tax Court
T.C. Memo 1956-263; 1956 Tax Ct. Memo LEXIS 30; 15 T.C.M. (CCH) 1389; T.C.M. (RIA) 56263; November 29, 1956
*30 James F. Butler, Esq., Continental Bank Building, Boise, Ida., for the petitioners. Wendell M. Basye, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax and additions to the tax for the taxable year 1951, as follows: Additions to Tax
Sec.
Sec.
Sec.
Deficiency
293(a)
294(d)(1)(A)
294(d)(2)
$1,700.94
$85.05
$149.85
$97.20
The issues presented are (1) whether petitioner Floyd M. Haney received certificates representing 50,000 shares of the capital stock of the First Uranium Corporation of Nevada, Inc., in the calendar year 1951; (2) whether the receipt of such shares constituted taxable income to the extent of the fair market value of the shares; (3) whether the shares of capital stock had a fair market value on the date of receipt and, if so, the fair market value of such shares; and (4) whether respondent properly imposed additions to the tax under sections 293(a), 294(d)(1)(A), and 294(d)(2) of the Internal Revenue Code of 1939. Findings of Fact The stipulated facts are found accordingly. Petitioners are husband and wife, *31 residing at Moses Lake, Washington. They filed a joint income tax return for the calendar year 1951 with the collector of internal revenue for the district of Idaho. The return for 1951 did not report any income from wages, salaries, bonuses, commissions, or other compensation, and disclosed a net loss for such year. Since Leonora Haney is involved solely by reason of the filing of a joint return, Floyd M. Haney will be hereinafter referred to as petitioner. Sometime in 1950 petitioner was approached by C. R. Quinlisk, president of the First Uranium Corporation of Nevada, Inc., hereinafter referred to as the corporation, and Floyd Tegnell, with the view of having petitioner interest people of his community in the purchase of the capital stock of that corporation. During part of the year 1950 and throughout the year 1951 petitioner devoted his time, energy, and labor to interesting people in buying the stock of the corporation, and during the year 1951 promoted the sale and sold its shares. Petitioner expected to be compensated for such services based upon an oral understanding with C. R. Quinlisk, president of the corporation, although no stipulated value was placed upon the services *32 to be rendered by petitioner. In the fall of 1950 and during the year 1951 petitioner furnished certain grading and leveling equipment to the corporation for its use in building an access road, stripping overburden, and excavating for a mill site and a settling pond on the corporation's mine property. By an oral agreement with the president of the corporation petitioner was to receive a fair cash rental for the use of such equipment, the amount not being definitely fixed. During 1951 petitioner was primarily occupied in working for the corporation. During that year he served as a member of its board of directors. On January 12, 1952, petitioner became president and served in that capacity for a period of about 45 days. On December 5, 1951, the corporation issued stock certificate No. 333 for 25,000 shares of its capital stock in the name of petitioner, and on December 28, 1951, the corporation issued stock certificate No. 370 for 25,000 shares of its capital stock in the name of petitioner. Both of such certificates were treated on the books of the corporation as having been issued as payment of commissions to petitioner. On the face of certificates Nos. 333 and 370 it is stated *33 that the authorized capital stock is 1,000,000 shares of the par value of $1 and is fully paid and nonassessable. Each of such certificates bears the endorsement of petitioner in blank with no date designated. During the year 1951 certificates for various shares of the capital stock of the corporation were issued in the name of petitioner, which were subsequently sold by him. Petitioner also solicited subscriptions for purchases of stock on behalf of the corporation. During the spring of 1951 a stock certificate representing 5,000 shares of the capital stock of the corporation was issued in the name of Leonora Haney, wife of petitioner, and certificates for 1,000 shares each were issued in the names of petitioner's children. After the issuance of such certificates for stock petitioner remitted cash payments to the corporation in the approximate amount of $7,100. During the years 1950 and 1951 all sales of stock of the corporation made by petitioner either from his own stock or by means of stock subscriptions were made for $1 per share and in some instances for as high as $1.50 per share. Stock purchases from persons other than petitioner were made for $1 per share. In January *34 1952 some shares of stock were purchased through petitioner for $1 per share. At a special meeting of the directors of the corporation held on November 16, 1951, the outstanding indebtedness and the lack of operating capital were discussed. Also, at this meeting the directors authorized the issuance of a note for $5,200 to petitioner to cover his loans to the corporation. The note was issued, but sometime in 1952 petitioner surrendered the note to the corporation, cancelling the indebtedness. On December 3, 1951, the board of directors resumed the adjourned meeting of November 16, 1951. At this meeting the offer of C. R. Quinlisk, president, to transfer 250,000 shares of his personal stock to the treasury of the corporation was discussed. The minutes disclose that the treasury stock was practically exhausted and that there were creditors holding claims in excess of $30,000 and for the company to continue operations it would be necessary to arrange additional financing; that C. R. Quinlisk, its largest stockholder, was very anxious that the company continue to operate and voluntarily transferred, donated and granted to the corporation 250,000 shares of his personal stock to be sold *35 or disposed of for all corporate purposes; and that Quinlisk agreed to accept in settlement of his claim for dividends in the corporation payments not to exceed 25 per cent of the net earnings, after taxes, for a period of 25 years. A motion to accept the offer of Quinlisk was unanimously carried. At a special meeting of the directors held on December 20, 1951, a resolution was adopted authorizing the corporation to negotiate for a loan of not less than $30,000 or more than $50,000 and to give a mortgage on its personal property as security. In 1952 certain stockholders made a loan to the corporation of approximately $35,000 and were given a mortgage on the corporation's mill and equipment as security. The mortgage was foreclosed in 1953 or 1954. On January 17, 1952, M. M. Hintze purchased through petitioner, then president, 50 shares of the capital stock of the corporation for which he paid $1 per share. In 1952 petitioner recovered the grading and land-leveling equipment which he had furnished the corporation in 1950. The corporation never made any cash payment to petitioner as rental, or for the purchase of such equipment. During the taxable year 1951 petitioner Floyd *36 M. Haney received stock certificates numbered 333 and 370 representing 50,000 shares of the capital stock of the First Uranium Corporation of Nevada, Inc.
Petitioners have failed to show that the certificates representing 50,000 shares of the First Uranium Corporation of Nevada, Inc., were not issued and received in the taxable year 1951 in payment of commissions. Petitioners have failed to establish that the fair market value of the 50,000 shares at the time of their receipt was less than 25 cents per share, as determined by the respondent. Petitioners, in the taxable year 1951, received income to the extent of the fair market value of the 50,000 shares of the capital stock of the First Uranium Corporation of Nevada, Inc.
Opinion LEMIRE, Judge: The respondent determined that petitioners received income in the taxable year 1951 in the amount of $12,500, which he found to be the fair market value of the 50,000 shares of the capital stock of the First Uranium Corporation of Nevada, Inc., which were issued to and received by petitioners in that year. Petitioners contend that the certificates representing the 50,000 shares were mailed to Floyd Haney without his knowledge or *37 consent; that such shares were an unwanted gift which was refused; that the corporation was insolvent and the shares were worthless at the time of their receipt; and that only certificate No. 333 for 25,000 shares was actually received in the taxable year 1951. The questions presented are factual. It is well settled that the determination of the respondent is presumptively correct and the burden of proof is upon the petitioners to establish the contrary. Wickwire v. Reinecke, 275 U.S. 101. We think the petitioners have failed to carry their burden with respect to each of the issues presented for the reasons hereinafter set forth. The respondent determined that petitioner received two certificates representing 50,000 shares of the capital stock in the taxable year 1951. Petitioners concede that certificate No. 333 representing 25,000 shares was received in 1951, but contend that certificate No. 370, dated December 28, 1951, for 25,000 shares was not received until 1952. Petitioner Floyd Haney testified that certificate No. 370 was received in 1952. He offered no other evidence tending to support his oral statement. Upon cross-examination it was developed that *38 he was unable to fix the date of receipt and had no record or memorandum from which he could refresh his memory. The record shows that in September 1953 John W. Hartigan, a deputy collector and revenue agent then stationed at Idaho Falls, Idaho, made an audit of the returns filed by petitioners for the years 1951 and 1952. Hartigan testified that at a meeting with petitioners' accountant, at which both petitioners were present, he advised them that the records he had examined disclosed that petitioners had received certificates representing 50,000 shares of stock in 1951, and that petitioners did not disclaim having received them and made no claim that the certificates had been received at any other time. In the light of all the evidence and the presence in the record of contradictory and inconsistent statements in Haney's testimony as to other relevant matters, we are persuaded that the present claim that certificate No. 370 for 25,000 shares was not received until 1952 is a belated one. We are unwilling to regard the unsupported oral statement of Haney as of probative force sufficient to overcome the presumption of the correctness of respondent's determination. We therefore have *39 found as a fact that the certificates representing the 50,000 shares of stock were received by petitioners in the taxable yer 1951. The next question presented is whether the 50,000 shares of stock were issued by the corporation in payment of commissions for services which Floyd Haney rendered or were the certificates gifts from the corporation which he refused to accept. The record establishes that during the fall of 1950 and continuing throughout the year 1951 Floyd Haney was primarily engaged in promoting the sale of the capital stock of the corporation, and that he expected to be paid for such services. At the time Haney agreed to promote the sales of stock the amount he was to be paid was not definitely fixed. The corporate minutes, in evidence, do not disclose that the issuance of the certificates to Haney was authorized by the board of directors. However, the corporate journal contains entries on December 5 and December 28, 1951, on which dates the certificates were issued, to the effect that the respective certificates were to record commission paid to Floyd Haney. The only evidence presented tending to establish that the stock was not issued in payment of commissions *40 is the oral testimony of Haney that the shares were a gift which was not accepted and was returned. The directors and officers were without authority to give away the corporate assets, and a presumption exists that they did not intend to violate their trust. Noel v. Parrott, 15 Fed. (2d) 669, certiorari denied 273 U.S. 754. Such presumption, along with the other facts and circumstances hereinbefore referred to, give rise to the inference that the 50,000 shares of stock were issued in payment of commissions and not as a gift. It is our conclusion that the oral testimony of Haney is insufficient to show the respondent's determination to be erroneous. Petitioners further contend that at the time the certificates for 50,000 shares were received they were worthless. Floyd Haney testified that the corporation was insolvent in December 1951 when the certificates were issued. The corporate minutes in evidence show that the corporation was without operating capital and that the directors were endeavoring to obtain funds by either having the stockholders make additional contributions or obtaining loans. The record shows that the corporation had considerable property. *41 There is proof that the liabilities of the corporation were in excess of $30,000. No financial statement or balance sheet was offered, and there is no evidence of the value of the assets of the corporation in December 1951 or at any other time. The opinion expressed by Haney and some other stockholders that the corporation was insolvent in December is not persuasive in the absence of any facts to support the conclusion. Whether or not the shares had value during the critical period involved is for the Court to determine upon all the facts of record. The corporation had an authorized capital of $1,000,000 consisting of 1,000,000 shares of the par value of $1 per share. The record does not reveal the number of shares which had been issued, but the minutes disclose that the treasury stock was nearly exhausted. There is evidence that many shares were sold in 1951 and some shares were sold in 1952 at $1 per share. It does not appear that any shares were sold at less than $1. It affirmatively appears that sometime in 1952 the corporation secured a loan of approximately $35,000 by giving a mortgage upon its mill and other property, and that such mortgage was not foreclosed until 1954. The *42 fact that the nature of the corporation's business made its shares speculative marketwise does not justify the inference that the shares had no fair market value. It is our conclusion that the evidence does not compel a finding that the shares in question had no value in December 1951. The respondent determined the fair market value to be 25 cents per share. Petitioners have failed to carry their burden of showing that the fair market value was less than 25 cents per share. For failure of proof the deficiency determined by the respondent is sustained. The respondent also imposed additions to the tax under sections 293(a), 294(d)(1)(A), and 294(d)(2) of the Internal Revenue Code of 1939. Petitioners offered no proof and on brief make no argument that the additions to the tax were not properly imposed. Under the circumstances the additions to the tax determined by the respondent are sustained. Decision will be entered for the respondent.